IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HENRY WESTON,

Plaintiff,

v.

OPINION & ORDER

JEFFREY MANLOVE, BELINDA SCHRUBBE,
ALEISHA COLE, AMY RADCLIFFE, ED NEISNER,[1]
and PAUL SUMNICHT,

14-cv-306-jdp

Defendants.

Pro se plaintiff and prisoner Henry Weston is proceeding on claims that medical staff at the Waupun Correctional Institution failed to provide adequate treatment for pain in his legs and lower back, in violation of the Eighth Amendment. Defendants have filed a motion for summary judgment, Dkt. 57, which is ready for review. I will deny the motion as to defendant Belinda Schrubbe because there are factual disputes regarding whether Schrubbe refused to help Weston get a medical appointment. But I will grant the motion as to the remaining defendants because no reasonable jury could find that any of them consciously refused to provide Weston adequate care.

Also before the court is Weston's motion for assistance in recruiting counsel. Dkt. 80. I will deny that motion because Weston has failed to show that the case is too difficult for him to litigate without a lawyer.

---

[1] I have amended the caption to reflect the correct spelling of Ed Neisner's name.

UNDISPUTED FACTS[2]

The following facts are undisputed unless otherwise noted.

Weston is a prisoner at the Waupun Correctional Institution, where he was confined during the events relevant to this case. In a health service request dated February 6, 2012, Weston complained about pain in his left leg. Two days later, Weston was examined by a nurse at the prison who is not a defendant. Weston told the nurse that he started feeling pain about four weeks earlier while he was at the Rock County jail. The pain was in his buttocks and left leg and radiated to his toes. He described the pain as "like a Charlie horse." The nurse instructed him to take ibuprofen, avoid strenuous sports, and continue walking "as tolerated." Dkt. 79, ¶ 12. A follow-up appointment was scheduled for the following week.

At the February 14 follow-up appointment with another nurse (also not a defendant), Weston stated that he was still feeling pain down his buttocks and left leg. He also said that he may have injured himself while jumping up and down from his top bunk. The nurse instructed Weston to perform hip-stretching exercises, use muscle rub, and alternate warm and

_____

[2] Weston objected to several of defendants' lengthier proposed findings of fact on the ground that they are "rambling" and show that defendants "intended to confuse" him. *E.g.*, Dkt. 79, ¶¶ 39 and 44. Weston's point is well taken. A significant number of defendants' proposed findings of fact were long paragraphs that defendants should have broken into multiple proposed facts. Dkt. 40, at 16 ("A party must propose each fact in a separate, numbered paragraph, limited as nearly as practical to a single factual proposition."). I did not disregard these proposed facts because Weston generally responded to the substance of the proposed fact after he objected and he showed that he understood what defendants meant. But counsel should make an effort in future cases to submit proposed facts that are easier to respond to, particularly when the opposing party is pro se.

I also note that Weston did not sign the declaration that he submitted with his summary judgment materials, Dkt. 77, but I considered the declaration because defendants did not object to it.

cold compresses around exercises. Another follow-up appointment was scheduled for the following week.

On February 22, defendant Amy Radcliffe, a nurse, examined Weston. He said that his pain had not gone away despite using ibuprofen, ice, and stretching. It was a constant and radiating pain that he rated a "4.5" on a scale of 1 to 10.

Radcliffe inspected and palpated Weston's left buttock and leg but felt no abnormalities. She directed him to continue the same regimen of ice, ibuprofen, and stretching, and to avoid doing things that make him uncomfortable. She stated that his injury "may take a significant amount of time to heal." Dkt. 79, ¶ 14. She also spoke to Weston about watching for signs and symptoms and determining when to submit a health service request for follow-up treatment.

Six months later, on July 31, 2012, defendant Aleisha Cole, a nurse at the prison, saw Weston for complaints of back and leg pain. He stated that staff in the health services unit had seen him multiple times in 2012, and that the pain got better on its own. Now, Weston said he was suffering from intermittent, sharp, and shooting pain, making it difficult for him to sleep and walk. He was not taking any pain relievers.

Cole observed that Weston was limping but had a steady gait. She did not observe any physical deformities, changes in skin color, or signs or symptoms of inflammation. Cole prescribed ibuprofen and an extra pillow for repositioning. (The parties dispute whether Cole also referred him to a physician.)

On August 6, 2012, Weston had an appointment with either defendant Paul Sumnicht or defendant Jeffrey Manlove, both of whom were physicians at the prison. Weston said that he had hurt his back while playing basketball in 2005 and that it now hurt to stand straight

and walk. After an examination, the doctor concluded that Weston was suffering from a moderate left sacral iliac strain and a mild left lower lumbar strain. The doctor instructed Weston to take ibuprofen when he experienced pain or inflammation and ordered an x-ray and a physical therapy evaluation.

Weston did not receive an x-ray at that time. The parties do not explain why, but it is undisputed that doctors are not involved in scheduling x-rays. Weston did not notify the health services unit or anyone else that he had not received his x-ray.

On August 20, 2012, Weston had an evaluation with defendant Ed Neisner, a physical therapist, who recommended six sessions. Weston had physical therapy sessions every week or two between August 27 and October 22. Treatment consisted of heat, ultrasound, electric stimulation, and therapeutic exercise.

Neisner says that Weston never complained that the physical therapy wasn't working. In fact, Neisner says that Weston consistently reported throughout the sessions that he was improving. Although Weston does not dispute that he reported a decrease in symptoms as a result of the physical therapy sessions, he also says that he "perpetually advised [Neisner] that th[e] exercising was not effective and actually induced further pain." Dkt. 77, ¶ 37.

Sumnicht left his employment with the prison on October 8.

The following year, on September 8, 2013, Weston wrote to defendant Schrubbe, the manager of the health services unit, telling her that he was not receiving adequate treatment for "serious chronic distressful pains" in his lower back and legs. Dkt. 79, ¶ 35. In response, Schrubbe wrote: "You were seen on 8-27-13 per your request, assessed your medical need and provided treatment. You were also instructed to write HSU if no improvement. I will schedule

you per this request." (Neither side discusses the August 27 appointment in their briefs or proposed findings of fact.)

Schrubbe does not remember what she did next, but she believes that she either placed Weston's name on a list to be scheduled for an appointment with a nurse or included his letter with other health service requests that require an appointment. Schrubbe does not schedule the appointments herself; that is handled by another staff member. Weston did not receive an appointment at that time.

On January 3, 2014, health services staff saw Weston in response to a health service request for lower back and leg pain. The parties do not say what happened at that appointment.

On January 24, 2014, Weston had an appointment with defendant Manlove, a physician at the prison. After examining Weston, Manlove concluded that he suffered from "chronic intermittent left sciatica," which involves pain radiating along a nerve that runs from the lower back to one or both legs. The condition may be caused by a herniated disk or bone spur that presses on the nerve.

Manlove prescribed a higher dose of ibuprofen (600 mg as opposed to 200 mg) and a Vitamin D supplement. He also ordered x-rays of the lumbar spine and physical therapy. Results of Weston's x-ray showed "a mild loss of disc space height at L5/S1," which could cause sciatica.

Weston also ordered an MRI, which Weston received later in 2014. The MRI showed "a central bulging disc herniation of soft gel like material that was putting light pressure directly backwards on the S1 nerve roots that would exit at S1, the next level below. He did not have pressure on the L5 nerve root exiting to the sides at the L5–S1 level." Dkt. 79, ¶ 25. The pain

specialist who evaluated the MRI concluded that physical therapy was an appropriate treatment.

Weston continued to receive different kinds of treatment in 2014, 2015, and 2016, including various pain relievers, a consultation with a specialist, a TENS unit, and steroid injections.

ANALYSIS

A. **Scope of the claims**

I allowed Weston to proceed on the following claims under the Eighth Amendment:

1. In February 2012, Radcliffe directed Weston to continue stretching and taking ibuprofen to treat his pain, even though Weston told her that the treatment was not working.

2. In July 2012, Cole prescribed ibuprofen and an extra pillow for Weston's pain, even though Weston told her that such treatment would not be helpful.

3. At an unspecified time, Sumnicht prescribed physical therapy for Weston without confirming his diagnosis that Weston had an S1 sprain.

4. In August 2012, Neisner continued to treat Weston with physical therapy, even though Weston told him it was not working.

5. Defendant Manlove diagnosed Weston with an L5/S1 sprain in 2012, but did not confirm with x-rays, an MRI, or appropriate treatment until 2014.

6. At an unspecified time, Schrubbe refused to help Weston get medical treatment.

Dkt. 34 and Dkt. 49.

In his declaration, Weston complains about different conduct by defendants as well as conduct by prison employees other than defendants. It is too late to bring new claims against defendants or anyone else. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion

for summary judgment."). I have not considered potential claims that are outside the scope of the complaint and the screening orders.

Defendants also discuss issues that are outside the scope of the case. In both his complaint and his declaration, Weston focuses on events that occurred between February 2012 and early 2014, but defendants discuss events that occurred long after that. I have not considered those events either.

## B. Legal standard

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

> (1) Did the prisoner need medical treatment?

> (2) Did the defendant know that the prisoner needed treatment?

(3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment?

In response to a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Defendants do not challenge Weston's ability to show that he had a serious medical need as to any of his medical care claims, so I need not consider that issue.

## C. Amy Radcliffe

I allowed Weston to proceed on a claim that Radcliffe violated Weston's Eighth Amendment right to medical care by directing him to continue stretching and taking ibuprofen to treat his pain, even though he told her that the treatment was not working. A health care provider violates the Eighth Amendment when her treatment decisions are "blatantly inappropriate" or represent "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on [medical] judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotations omitted). No reasonable jury could find that Radcliffe's conduct meets that standard.

Although Weston told Radcliffe that the treatment wasn't working, that is not a sufficient ground under the circumstances of this case for finding that Radcliffe's treatment decision was blatantly inappropriate. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (prisoner's disagreement with treatment not sufficient to show Eighth Amendment violation). It is reasonable to infer deliberate indifference when a healthcare provider persists in providing treatment that she knows is ineffective, *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir.

2011), but that is not what happened. When Radcliffe examined Weston, he had only been on the same course of treatment for approximately one week, which is a far shorter amount of time than was at issue in cases in which the court found that health-care staff may have waited too long before trying something new. *Gonzalez*, 663 F.3d at 314 (five years); *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (ten months); *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010) (two months); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (year and a half). And Weston cites no evidence to support a view that Radcliffe believed that stretching and ibuprofen were ineffective forms of treatment. Rather, she stated that she believed it would take time for Weston to heal.

This claim is also undermined by Weston's own conduct. After his appointment with Radcliffe, Weston did not seek further treatment for another six months, and he admitted that his pain went away for a time. This is evidence that Weston did not require additional treatment from Radcliffe.

In his summary judgment materials, Weston raises two new issues. First, in his brief, he contends that Radcliffe "failed to make the necessary inquiries and examination that would reveal, in 2012, that Weston had sciatica." Dkt. 75, at 5. Even if I assume that such a claim falls within the scope of the complaint, it fails for multiple reasons. First, Weston does not cite any evidence showing that Radcliffe had the expertise that would allow her to make such a diagnosis. Second, even if I were to assume that Radcliffe was qualified to determine whether Weston had sciatica, Weston could not prevail on a "failure to diagnose" claim in the absence of evidence that such a diagnosis was obvious from the information available to Radcliffe, *Steele v. Choi*, 82 F.3d 175, 178 79 (7th Cir. 1996), but Weston has not adduced such evidence. Instead, he cites questions he says he obtained from the Mayo Clinic's website that healthcare

providers should ask to assist in determining whether a patient is suffering from sciatica. But in the absence of evidence showing that Radcliffe knew how to diagnose sciatica *and* knew that Weston's symptoms were likely caused by sciatica *and* knew that sciatica required different treatment from what she prescribed, her failure to ask more questions could not qualify as anything more than negligence, which is not sufficient to prove an Eighth Amendment violation. *Id. See also Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir. 2008) (doctor not liable under Eighth Amendment for failing to conduct cancer screening test in absence of evidence that doctor "thought that cancer was a realistic possibility" or that prisoner's "symptoms [were] obviously attributable to cancer").

Second, in his declaration, Weston says that Radcliffe did not give him any ambulatory aids. Because Weston did not raise this issue in his complaint or his brief, defendants did not have an opportunity to address it. But even if I assume that Weston did not forfeit this issue, it fails because Weston does not allege that he asked Radcliffe for an ambulatory aid and he points to no evidence showing that it should have been obvious to her that he needed one.

### D. Aleisha Cole

I allowed Weston to proceed on a claim that Cole violated Weston's Eighth Amendment right to medical care by prescribing ibuprofen and an extra pillow for Weston's pain, even though Weston told her that such treatment would not be helpful. If Weston had been complaining consistently about his pain at the time Cole examined him, that might raise a question whether Cole was persisting with ineffective treatment. But that is not what happened. Cole examined Weston in July 2012, six months after Cole had last complained. And Weston admits that he reported to Cole that his pain had gone away during that time, suggesting that earlier treatment had been successful. Under those circumstances, no

reasonable jury could find that it was blatantly inappropriate for Cole to treat Weston conservatively at first.

Cole also says that she referred Weston to a physician, Dkt. 62, ¶ 16, an averment supported by the medical records. Dkt. 60-1, at 25. In his declaration, Weston denies that Cole gave him a referral, Dkt. 77, ¶ 35, but it is undisputed that Weston had an appointment with a physician the following week. Dkt. 79, ¶ 19. Weston does not allege that he made any new requests for health care in the week in between the two appointments and he does not otherwise explain how he obtained the appointment with the physician. Regardless, because Weston received a prompt appointment with a physician, any failure by Cole to give Weston a referral did not harm him. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm.") (internal quotations omitted).

Weston also raises the same new issues that he raised with respect to his claim against Radcliffe, namely, that she failed to diagnose him with sciatica and that she failed to give him an ambulatory aid, and I conclude that they fail for the same reasons. Weston has not adduced evidence that his symptoms would have made it obvious to Cole that he may be suffering from sciatica or that he needed an ambulatory aid.

## E. Paul Sumnicht and Jeffrey Manlove

I allowed Weston to proceed on separate claims that Sumnicht and Manlove violated Weston's Eighth Amendment right to medical care. Weston alleged that Sumnicht had prescribed physical therapy for him before reviewing x-ray results and that Manlove diagnosed him with a sprain in 2012, but did not order x-rays, an MRI, or follow-up treatment until 2014.

It appears that Weston may be confused about which doctor provided particular treatment. In his declaration, Weston avers that it was Manlove and not Sumnicht who referred him to physical therapy in August 2012, Dkt. 77, ¶ 36, but he does not explain why he changed his view on this and he does not dispute defendants' proposed finding of fact that it was Sumnicht. Dkt. 79, ¶ 19. And though he alleged in his complaint that Manlove diagnosed him with a sprain in 2012, he does not dispute defendants' proposed finding of fact that Manlove's first examination of him was in January 2014.

Regardless whether Sumnicht or Manlove was treating Weston, I conclude that defendants are entitled to summary judgment on these claims. As for the decision to prescribe physical therapy before reviewing x-ray results, Weston has not adduced any evidence that the decision was blatantly inappropriate or even unreasonable. When screening this claim, I noted that "Weston's allegations regarding Sumnicht's deliberate indifference are borderline, at best," Dkt. 49, at 2, and Weston's summary judgment materials have not made the claim stronger.

Weston does not explain why he believes that an x-ray was needed to determine whether physical therapy was appropriate. Even after the doctor determined that Weston had sciatica, he concluded that physical therapy was an appropriate treatment. Weston does not cite any contrary evidence and he does not allege that physical therapy is an inappropriate treatment for sciatica as a general matter. Weston does allege that the physical therapy was not helpful for him, but he does not cite evidence or even allege that Sumnicht or Manlove knew when they prescribed it that it would make his condition worse, as he now says it did. Even when the doctor prescribed physical therapy a second time, Weston does not say that he objected or informed the doctor of his negative experience the first time.

As for the claim that Manlove failed to obtain an x-ray, MRI, or other treatment for Weston until 2014, that claim cannot succeed if Manlove did not examine him until 2014. But regardless whether Sumnicht or Manlove treated Weston in 2012, the undisputed facts do not support an Eighth Amendment violation.

First, it is undisputed that the doctor did order an x-ray in 2012. Although the order was not implemented, it is also undisputed that the doctors are not responsible for scheduling the x-rays. Weston accuses the doctor of failing to "see this through," Dkt. 75, at 8, but even if I assume that the doctor "should have" checked to make sure that the x-ray was taken, that would support a negligence claim, at most. *Ramos v. Hamblin*, 840 F.3d 442, 445 (7th Cir. 2016) ("[Prison officials] are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know."). Weston has not adduced any evidence that the doctor actually knew that staff failed to implement his order and he does not allege that he reminded the doctor or anyone else about the x-ray.

Second, as to an MRI, Sumnicht testified that it was premature to order one before seeing the results of an x-ray, Dkt. 79, ¶ 24, and Weston has not adduced any contrary evidence. *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) ("An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a classic example of a matter for medical judgment.").

Third, as to other treatment, it is undisputed that the doctor ordered physical therapy and, as discussed above, Weston has not adduced evidence that physical therapy was a blatantly inappropriate form of treatment. If Weston believed that the physical therapy was

unsuccessful, he was free to seek follow-up care, but he does not allege that he complained about his pain again for the next several months, to the doctor or to anyone else.

## F. Ed Neisner

I allowed Weston to proceed on a claim that Neisner violated his Eighth Amendment right to medical care by continuing to treat him with physical therapy, even though Weston told him it was not working. Weston says nothing about this claim in his summary judgment brief, suggesting that he has abandoned it. Regardless, Neisner is entitled to summary judgment on the claim.

The parties dispute whether Weston told Neisner that physical therapy was helping his pain. But even if the therapy was not helpful, it does not follow that Neisner violated the Eighth Amendment. Because Neisner was a physical therapist and not a doctor or a nurse, there was nothing else that Neisner could offer Weston, or at least Weston does not adduce evidence that Weston could have provided additional treatment. Weston does not allege that Neisner tried to harm him during therapy or that Neisner or anyone else required him to participate in the sessions if he did not find them helpful. In the absence of that type of evidence, no reasonable jury could find in Weston's favor on this claim.

## G. Belinda Schrubbe

I allowed Weston to proceed on a claim that Schrubbe failed to help him get treatment after he complained to her. In their summary judgment materials, defendants do not deny that Schrubbe failed to help Weston get treatment. Their sole ground for dismissing this claim is that "Weston presents no evidence that Schrubbe was personally responsible for scheduling his appointment." Dkt. 58, at 15. Regardless whether that is true, it is not dispositive of this claim.

It is undisputed that Weston complained to Schrubbe that he was not receiving adequate medical care for his pain, that Schrubbe promised Weston that she would "schedule [him for an appointment] per []his request," and that no one scheduled him for an appointment. Dkt. 60-1, at 80. Schrubbe also admits that she does "not recall exactly what [she] did" after she responded to Weston's letter. Dkt. 65, ¶ 10. Although she says that she believes she either placed his name on a list to be scheduled "[o]r" put his request "with the other [requests] to be scheduled," *id.*, she appears to be speculating. She does not explain how it is that she is unable to remember what she did but that it must have been one of those two things. And she does not cite any other evidence to support her testimony, such as a list showing that Weston was waiting to be scheduled.

From this evidence, a jury could reasonably infer that Schrubbe failed to forward Weston's request to a scheduler and prevented Weston from receiving a medical appointment. It may be that Schrubbe did her part and someone else dropped the ball or that Schrubbe simply forgot to do what she promised to do, which would be negligence but not deliberate indifference. But it is also possible that Schrubbe declined to take action because she did not care whether Weston received any care. Because a reasonable jury could reach either conclusion, I will deny defendants' motion for summary judgment as to this claim.

It is not clear what damages Weston suffered as a result of Schrubbe's alleged conduct. Defendants do not raise that issue, so I will not consider it now, but in light of the limited scope of the remaining claim, the parties are encouraged to make a good faith effort to settle the claim before devoting the resources necessary to complete a trial.

**H. Motion for Assistance in Recruiting Counsel**

After the parties completed briefing defendants' summary judgment motion, Weston filed a motion for assistance in recruiting counsel. Dkt. 80. A pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet several requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford to hire his own lawyer. 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). Finally, he must show that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654–55.

Weston is indigent and he has shown that three lawyers denied his requests to represent him. Dkt. 80–1. But he has not shown that the legal and factual difficulty of the case exceeds his abilities. Weston's summary judgment submissions show that he is intelligent, understands law and procedure, and is capable of explaining his version of events in a declaration and making legal arguments in a brief. As to the difficulty of the case, only one claim remains against one defendant. The law relating to that claim is well established and relatively straightforward. Weston does not need an expert to prove his claim and he does not need specialized knowledge.

Weston says that he needs counsel because he has "limited knowledge of the law," Dkt. 80, but, as discussed above, Weston has already demonstrated his understanding of the

basic legal issues in this case. And several weeks before trial, he will receive a memorandum from the court that provides general guidance on preparing for trial.

Weston also says that he "has only a six[th] grade education and no legal education." Dkt. 81. He did not submit any records showing his education level, but regardless how much education he has had, his submissions to the court show that he can read and write well and understand the law. He does not allege that anyone else prepared his submissions for him.

In short, I am persuaded that Weston is capable of representing himself at trial, so I will deny his motion for assistance in recruiting counsel.

## I. Scheduling

This case is scheduled for trial on January 22, 2018, but that date will have to be moved because of a conflict with another trial. The court will strike the schedule and direct the clerk of court to set a new scheduling conference with Magistrate Judge Stephen Crocker.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by Amy Radcliffe, Aleisha Cole, Jeffrey Manlove, Paul Sumnicht, Ed Neisner, and Belinda Schrubbe, Dkt. 57, is DENIED as to plaintiff Henry Weston's claim that defendant Schrubbe refused help Weston get treatment for his back and leg pain, in violation of the Eighth Amendment.

2. Defendants' summary judgment motion, Dkt. 57, is GRANTED in all other respects. Defendants Radcliffe, Neisner, Manlove, Cole, and Sumnicht are DISMISSED from the case.

3. Weston's motion for assistance in recruiting counsel, Dkt. 80, is DENIED.

4. The trial date and all pretrial deadlines are STRICKEN. The clerk of court is directed to set a new telephone scheduling conference with Magistrate Judge Stephen Crocker.

Entered December 13, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge